Jason R. N. Monteleone
JOHNSON & MONTELEONE, L.L.P.
350 North Ninth Street, Suite 500
Boise, Idaho 83702
Telephone:  (208) 331-2100
Facsimile:  (208) 947-2424
*jason@treasurevalleylawyers.com*
Idaho State Bar No. 5441

Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## IN AND FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LORI S. BLASCH,<br><br>Plaintiff<br><br>v.<br><br>HEWLETT PACKARD ENTERPRISE COMPANY, a Delaware corporation, HP, INC. D/B/A HP COMPUTING AND PRINTING, and JOHN/JANE DOES I-V whose true identities are unknown,<br><br>Defendants | **Case No.**<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

COMES NOW the above-named Plaintiff, Lori S. Blasch, by and through her attorneys of record, Johnson and Monteleone, L.L.P., and, for her claims and causes of action against the above-named Defendants, states and alleges as follows:

## PARTIES

1.      At all times relevant to this action, Lori S. Blasch, Plaintiff, was and is a resident of Ada County, Idaho.

2.      At all times relevant to this action, Hewlett Packard Enterprise Company, a Delaware corporation, and HP, Inc. d/b/a HP Computing and Printing ("HP") are corporate entities and were and are Delaware corporations in good standing with the Secretary of State for the state of Idaho, currently and properly registered with the Office of the Secretary of State for the state of Idaho, and engaged in the business of providing computer hardware and software components to members of the consuming public.  HP's business address is 3000 Hanover Street, Palo Alto, CA  94304, and its registered agent for service of process is CT Corporation System, 921 S. Orchard Street, ste. G, Boise, ID  83705.

3.      At all times relevant to this action, John/Jane Does I through V, whose true identities are presently unknown ("the Doe Defendants"), Defendants, are now and at all times relevant to this action were entities or individuals who were the agents, employees, independent contractors, subdivisions, franchisees, wholly-owned subsidiaries, or divisions of the Defendants specifically identified herein or are entities or individuals acting on behalf of, in a master/servant or principal/agent relationship with, or in concert with Defendants named herein.

## JURISDICTION AND VENUE

4.      Plaintiff realleges the preceding paragraphs as though fully set forth *in haec verba*.

7.      This Court has subject matter jurisdiction over this dispute pursuant to I.C. §§44-1702, 44-1704, 67-5908, 67-5909, and 67-5911.

8.      This Court has personal jurisdiction over the parties pursuant to I.C. §5-514.

9.      Venue is proper in this judicial district and county pursuant to I.C. §§5-402, 5-403, and 5-404.

## FACTS COMMON TO ALL CAUSES OF ACTION

10.     Plaintiff realleges the preceding paragraphs as though fully set forth *in haec verba*.

11.     Plaintiff began her employment with Defendant in October 2010 as a Industrial Designer in Color Material and Finish.

12.     Plaintiff was interviewed by Defendant's HR on three occasions due to other people complaining about Kevin Rausch and perceived gender discrimination and harassment.  Mr. Rausch was required to undertake sensitivity training.  One person complaining to HR about Kevin Rausch was Julie Roberts-Elliott.

13.     Julie Roberts-Elliott was constantly singled out in meetings by the director for working from home in front of all groups even though HP allows employees to work from home when needed.  Julie continued to meet all deadlines in her job responsibilities. She was told on many occasions that, if HP had to lay people off, she would the first to go..

14.     All female employees in Defendant's GXD Division were harassed by Mr. Rausch, as they would be reprimanded for working from home, when their similarly-situated, male counterparts would not be so reprimanded.   These female employees included Plaintiff, Daniella Matutes, Cathy Chen, Julie Roberts-Elliott, Aurem Bair, and Julie Kennedy.

15.     Mr. Rausch would frequently take work assignments away from female employees in the GXD Division and give those work assignments to similarly situated,

male employees.  These female employees who were subjected to this disparate treatment were Plaintiff, Daniella Matutes, Cathy Chen, Julie Roberts-Elliott, and Aurem Bair.

16.    Kevin Rausch also shared with Julie the other individuals by name who would be let go which happened to be the majority of the women in Plaintiff's group, including Plaintiff, Cathy Chen, Julie Roberts-Elliott, and Kara Burns.

17.    Many work projects were taken away from Defendant's female employees and given to male counterparts with no explanation or justification.  Work projects were never assigned to women on the same basis that they were assigned to men in the workplace.

18.    HR told Julie Roberts-Elliott, after Defendant's investigation, "…[T]here is no law against having a jerk for a boss."  The investigation did find issues with the group, and they were going to be addressed.  Julie Roberts-Elliott was never notified as to how they were addressed.  Due to the continued harassment (i.e. being criticized and being called out in front of her peers), Kevin took away the funding for a number of her projects and gave the remaining projects to her mail counterparts leaving her with less responsibility and zero funding for her remaining projects. She then suffered a health scare due to the stress which she felt was significant enough to give her resignation.

19.    Julie Roberts-Elliott filed for unemployment benefits, even though she resigned and was granted unemployment benefits due to HP not contesting her complaint of harassment.

20.    Kara Burns was also harassed by Kevin Rausch.  Kara too was terminated not due to performance just as Plaintiff.  She was also called out in front of peers by Kevin Rausch for being confrontational which in actuality she was performing her job.  Kara did

not report to Kevin Rausch, but he advised management he wanted her gone, because she was toxic to the group.  Kevin never made such comments about male employees within the work group.

21.    Mark La Salle issued a complaint to HR about the women in Plaintiff's group being harassed and nothing was ever followed up on by HR.  Mark specifically informed them that Plaintiff was unnecessarily being singled out on a regular basis and was not being supported by her direct boss, John Gassett.

22.    Plaintiff continued to ask to attend an Industrial Design conference for the four (4) years prior to her termination from employment with Defendant.  Plaintiff was denied this request but a junior Designer, Ryan Barnes (male), was sent instead of Plaintiff.

23.    Plaintiff was denied travel for her job, but many of the men in her work group traveled regularly.  Her counterparts in Vancouver, Washington, were allowed to attend conferences and training.

24.    Plaintiff was denied classes to advance her career to stay current in her job, and Defendant denied Plaintiff's such requests on multiple occasions.  By stark contrast, several men were able to attend such classes, including Nash Stanton.

25.    Plaintiff's job as an Industrial Designer was in the Color Material and Finish ("CMF") Department working on the plastic housings for LaserJet printers.  Plaintiff was taken off the CMF and placed on a design project and told not to work on the CMF projects.  This was for a three-month period.  This was determined by Plaintiff's direct supervisor, John Gassett, and her director, Kevin Rausch.  Plaintiff was then placed back on CMF because the CMF responsibilities were not being taken care of and, at the same time, Plaintiff was placed on an "unofficial" performance improvement plan ("PIP").  Plaintiff

was blindsided by being placed on a PIP of any sort because she had been told not to work on the CMF originally, and this was the primary basis for placement on the PIP. Her direct manager informed her that the director, Kevin Rausch, told him he had to place her on the PIP. In the months that followed placement on the PIP, Plaintiff's manager, John Gassett, would say he needed to address Plaintiff's placement on the PIP. Plaintiff asked him if that meant HR would be involved, and he said no, not at all, and that he needed to remove the PIP from Plaintiff's personnel file.

26.     Daniella Matutes was also placed on a PIP. She too has been harassed and discriminated because of her gender. She was hired for a senior position directly under the director. She was demoted and the position she was hired for was filled by Keith Kozak and then told she was not qualified. She has been subjected to the same treatment as Plaintiff with Kevin Rausch providing little to no help in quelling the illegal conduct occurring in Defendant's workplace in Boise.

27.     Plaintiff is not aware of any men in her group being placed on a PIP or reprimanded in any way.

28.     There was a project review meeting with Respondent's Vice-President of Design. No women were invited to present their work at this meeting. Complainant's manager presented Complainant's own Color Material presentation and finish work. Aurem Bair, a female's  work project was presented by her male counterpart, not her manager). Daniella Matutes also had her work presented by a male peer, as did Cathy Chen. After the meeting had finished the Master Designer, Michael Leman, asked why no woman was invited to this meeting and why was Plaintiff's manager presenting Plaintiff's work, especially as even the junior designer (male) was invited to the meeting. No

explanation has ever been provided to Plaintiff as to why this project review meeting was only attended by males or why only males were invited to attend.

### FIRST CAUSE OF ACTION -- VIOLATION OF THE IDAHO EQUAL PAY ACT (I.C. §44-1701, *et seq.*)

29.     Plaintiff realleges the foregoing paragraphs as though fully set forth *in haec verba*.

30.     Defendant willfully discriminated against Plaintiff on the basis of her sex (female) and paid her unequally compared to similarly-situated, male coworkers within the same employment establishment by paying Plaintiff less than the male coworkers and at a rate less than the rate which Defendants paid to those male coworkers for comparable work on jobs which have comparable requirements relating to skill, effort, and responsibility.

31.     Defendants willfully violated the Idaho Equal Pay Act, when they retaliated against Plaintiff and ultimately terminated her employment for having voiced legitimate concerns and complaints about the gender-based pay disparity which was occurring at Defendant's facility; this retaliation was in direct violation of I.C. §44-1702(3).

27.     Defendant discharged and discriminated against Plaintiff, because she took action to invoke and/or assist herself and/or her female coworkers with the enforcement of the Idaho Equal Pay Act and to end the sex-based wage discrimination.

28.     Defendants' willful violations of the Idaho Equal Pay Act subject them to liquidated damages pursuant to I.C. §44-1704(1).

29.     Plaintiff has exhausted all administrative remedies pursuant to that statute and has suffered damages as a result of Defendant's conduct.

30.     As a direct and proximate cause and result of Defendant's illegal, adverse, employment actions, including, but not limited to, their violations of the Idaho Equal Pay Act, Plaintiff has suffered damages, both economic and noneconomic in nature, in such amounts as may be proven at trial but which meet the jurisdictional threshold of this Court.

31.     Plaintiff is further entitled to recover attorney fees and costs incurred in prosecuting this action, pursuant to Idaho Code §§12-120, 12-121, and other applicable law(s), rule(s), and regulation(s), and requests that this Court award the same.

### SECOND CAUSE OF ACTION – EMPLOYMENT VIOLATION OF AND RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED (42 U.S.C. §2000e-5, *et seq.*) AND THE IDAHO HUMAN RIGHTS ACT (I.C. §67-5901, *et seq.*)

32.     Plaintiff realleges the foregoing paragraphs as though fully set forth *in haec verba.*

33.     At time of her discharge from employment from Defendant, Plaintiff was fully qualified for her employment positions with Defendant and performed her job duties well.

34.     Defendant illegally retaliated against Plaintiff and ultimately terminated her employment for having communicated in good faith in voicing legitimate concerns about the preferential treatment being afforded her male coworkers.

35.     Plaintiff's voiced, legitimate concerns about the employment law violation committed by Defendant in the workplace and which were occurring at Defendant's facility was both objectively reasonable as well as subjectively reasonable in the premises and under the applicable circumstances.

36.     Defendant retaliated against Plaintiff and thereby materially and negatively altered the terms and conditions of her employment because of her complaints regarding the paramour favoritism which was occurring in the workplace as a result of preferential treatment of Plaintiff's male coworkers, and this retaliation and reprisals were in violation of I.C. §67-5911, as Plaintiff believed she was opposing an illegal, employment practice.

37.     Plaintiff has exhausted all administrative remedies pursuant to the governing statutes and has suffered damages as a result of Defendant's conduct.

38.     Plaintiff reserves this paragraph for the inclusion of a claim for punitive damages pursuant to I.C. §67-5908(3)(e) and Title VII.

39.     As a direct and proximate cause and result of Defendant's illegal, adverse, employment actions, including, but not limited to, their violations of the Idaho Equal Pay Act, Plaintiff has suffered damages, both economic and noneconomic in nature, in such amounts as may be proven at trial but which meet the jurisdictional threshold of this Court.

40.     Plaintiff is further entitled to recover attorney fees and costs incurred in prosecuting this action, pursuant to Idaho Code §§12-120, 12-121, 42 U.S.C. §1981a, and other applicable law(s), rule(s), and regulation(s), and requests that this Court award the same.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays judgment against Defendant as follows:

1.     As a direct and proximate result of Defendant's actions, Plaintiff has incurred and suffered the following injuries and damages for which she is entitled to compensation in amounts to be proven at trial for:

    a.       Noneconomic damages for past, present, and future pain and suffering, mental anguish, emotional distress, and humiliation;

    b.       Economic damages for past, present, and future loss of wages and loss of earning capacity;

    c.       Liquidated damages for double the economic damages for Defendants' willful conduct pursuant to I.C. §44-1704(1);

    d.       Available punitive damages pursuant under Title VII; and

    e.       Such other and further relief, as this Court deems just and equitable.

2.      That as a direct and proximate result of the aforementioned actions of Defendants, Plaintiff has been required to retain legal counsel for prosecuting this action, has retained the services of Johnson and Monteleone, L.L.P., to represent her in this action, has agreed to pay reasonable attorney fees and is therefore entitled to recover reasonable attorney fees and costs herein from Defendants.

DATED: This 8<u>th</u> day of March, 2022.

JOHNSON & MONTELEONE, L.L.P.

*/s/ Jason R.N. Monteleone*
Jason R.N. Monteleone
Attorneys for Plaintiff

## DEMAND FOR JURY TRIAL

Pursuant to F.R.C.P. 38(b), Plaintiff hereby demands a trial by jury on any and all issues properly triable by jury in this action.

DATED:  This 8th day of March, 2022.

JOHNSON & MONTELEONE, L.L.P.

*/s/ Jason R.N. Monteleone*
Jason R.N. Monteleone
Attorneys for Plaintiff